MILES P. ROBINSON & others *vs*. SELECTMEN OF WATERTOWN.

Middlesex.    October 9, 1957. — December 18, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Municipal Corporations*, Town meeting, Referendum, Employees, Citizen, Appropriation. *Watertown. Res Judicata. Mandamus. Public Duty. Equity Pleading and Practice*, Parties, Declaratory proceeding. *Moot Question. Words*, "Town meeting."

The bringing of a suit in equity against the town of Watertown by the name "Inhabitants of the Town of Watertown" did not make the several citizens of the town collectively parties to the suit. [539]

A consent decree entered in a declaratory proceeding by employees of a town against it, to the effect that votes adopted by its limited town meeting increasing pay rates in its wage and salary classification plan were not subject to the referendum procedure provided in the town, did not, in the circumstances, make that issue res judicata in a mandamus proceeding, heard with the declaratory proceeding, by citizens of the town to compel the selectmen to initiate the referendum procedure with respect to such votes. [539–541]

The question whether votes adopted by a limited town meeting increasing pay rates in the town's wage and salary classification plan established under G. L. (Ter. Ed.) c. 41, § 108A, were subject to the referendum procedure provided in that town did not become moot upon expiration of the fiscal year in which the votes were adopted. [541]

Votes adopted by the limited town meeting in Watertown increasing pay rates in the town's wage and salary classification plan established under G. L. (Ter. Ed.) c. 41, § 108A, were subject to the referendum procedure provided in Watertown by Spec. St. 1919, c. 205, as amended. [541]

The phrase "by vote of the town at a town meeting" in G. L. (Ter. Ed.) c. 41, § 108A, as appearing in St. 1948, c. 351, relating to town wage and salary classification plans, includes the voting of the voters at large by ballot under the referendum procedure provided in Watertown by Spec. St. 1919, c. 205, as amended. [542–546]

An amendment increasing pay rates fixed in a town's wage and salary classification plan established under G. L. (Ter. Ed.) c. 41, § 108A, was not accomplished by the mere voting of the general appropriations for the current year at an annual town meeting even though the sums appropriated were sufficient to cover increases in the rates specifically voted as an amendment of the plan under another article in the warrant.  [546–547]

There was on the record no room for the exercise of discretion to deny the writ of mandamus to citizens of a town seeking to compel the selectmen to initiate the referendum procedure provided in that town respecting certain votes adopted at a limited town meeting.  [547]

PETITION for a writ of mandamus, filed in the Superior Court on August 28, 1956.

The case was heard by *Swift*, J.

*Charles P. Mamakos*, for the petitioners.

*Robert J. Plunkett*, Town Counsel, for the respondents.

WHITTEMORE, J.  This is an appeal under G. L. (Ter. Ed.) c. 213, § 1D, from the final judgment of the Superior Court which was entered November 13, 1956, pursuant to order for judgment of October 16, 1956, and which, as a matter of discretion, dismissed a petition for a writ of mandamus.  The petitioners are three voters, taxpayers, and property owners of the town of Watertown.  The respondents are the selectmen of the town.  The petition seeks to compel the selectmen to act under Spec. St. 1919, c. 205, which inter alia established a limited town meeting system of government in the town, and to call a special meeting of the voters at large to vote by ballot on the questions involved in certain votes passed by the limited town meeting of August 6, 1956.  The votes in terms amended c. 10 of the town by-laws which, under G. L. (Ter. Ed.) c. 41, § 108A, as appearing in St. 1948, c. 351, established a wage and salary classification plan.  The effect of the amendment would be to increase rates of pay stated in the plan.

The case was tried on agreed facts with a bill in equity for a declaratory decree brought by certain employees of the town against the treasurer and "the Inhabitants of the Town of Watertown."  A final decree was entered in that case on October 23, 1956, adjudicating that such votes were not subject to the referendum procedure of Spec. St. 1919,

c. 205, § 8, and that the salaries and wages of the plaintiffs in that case and of all other employees had been duly established for the year 1956 by votes at the earlier annual (1956) limited town meeting,[1] and ordering the treasurer to pay at the amended, higher rates. This final decree was assented to by the attorney for the plaintiffs in that case and by town counsel for "Inhabitants of town of Watertown." The plaintiffs and the town waived appeal and no appeal was taken by the treasurer.

1. The final declaratory decree in the suit in equity has not made the issues in this case res judicata. The petitioners were not parties to that suit. In suing the town by the name "Inhabitants of the Town of Watertown" (see *Lowell* v. *Morse,* 1 Met. 473, 474), the plaintiffs did not sue the several citizens collectively. The right of citizens to maintain a petition for a writ of mandamus to enforce a public duty (*Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 93, *Brewster* v. *Sherman,* 195 Mass. 222, *Sears* v. *Treasurer & Receiver General,* 327 Mass. 310, 315; compare *Kaplan* v. *Bowker,* 333 Mass. 455) is not merely a derivative right. See *Brooks* v. *Secretary of the Commonwealth, supra,* page 93; *Attorney General* v. *Suffolk County Apportionment Commissioners,* 224 Mass. 598, 611. We need not determine whether citizens may be foreclosed who seek a writ after the entry of a final decree in a contested proceeding in which their town was a party.[2] That issue is not presented.

---

[1] The referendum procedure having been invoked in respect of the like votes at the annual meeting in March and April, 1956, and put in operation by the selectmen, the voters at large had voted against the amendments. The proposals for increase were thereafter newly initiated and the August 6, 1956, meeting passed the votes a second time.

[2] General Laws (Ter. Ed.) c. 231A, § 8, makes the town a necessary party where the validity of a by-law is involved. "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or by-law or of a franchise, license, easement or other privilege granted by the commonwealth or a municipality thereof, the municipality, or the agency granting the privilege, as the case may be, shall be made a party and shall be entitled to be heard. If a question of constitutionality is involved in any proceeding under this chapter, the attorney general shall also be notified of the proceeding and be entitled to be heard."

It is manifest that the plaintiffs in the declaratory pro-
ceeding were seeking to sustain the validity of the votes of
the limited town meetings. The selectmen in contesting
this mandamus proceeding had the same purpose. Their
answer appropriately sets out that "the subject matter con-
tained in [the] articles . . . related to salaries and wages
which . . . were not proper subjects for determination by
the voters at large at a referendum town meeting, and that
the action of the limited town meeting on August 6, 1956,
on said articles was final and conclusive . . . ." The re-
spective adversary positions of the plaintiff employees and
the petitioning citizens at the joint trial doubtless assured
fully adequate presentation of the contested issues, even
though the circumstance of the joint trial made neutral the
position of the town, its officers who had been sued, and
town counsel, who represented the defendants in the equity
proceedings and the respondents in this case.

Although the importance of the issue and the possibility
of a reversal, on appeal, of the judgment in this case could
have been thought with good reason to make advisable a
claim of appeal from the declaratory decree, we may assume
that the circumstances did not require it. Acceptance of
the Superior Court decree as final could not, however,
broaden its effect. The issues were presented in the Supe-
rior Court in two cases tried together. At the time of the
consent decree and waiver of appeal in one of them, the
petitioners, the only parties who had maintained an adver-
sary position to the view of the law taken in the declaratory
decree, had not waived their right to have this court, on
appeal, pass on the issues. In these circumstances the
assent of the town to the decree cannot foreclose that right.
We do not think that the petitioners were bound to seek to
join as parties in the declaratory proceeding, even if, as the
answer of the respondents indicates may have been the
case, they would have been accepted as parties without ob-
jection, and the declaratory proceeding was filed before the
petition herein. Since these petitioners were not true privies
of the town as a corporate party their right of appeal is un-

affected. In the circumstances the fact that there is an unappealed and hence final declaratory decree outstanding does not bar our determination of the issues in the pending case with the effect of establishing a different and superseding construction of the controlling statutes.

We do not intend to suggest that the declaratory decree is not binding on those who are parties thereto with the effect of putting beyond legal attack payments which have been made thereunder. See *Lesberg* v. *Lesberg,* 260 Mass. 216, 221; *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371, 375; *Butte, Anaconda & Pacific Railway* v. *United States,* 290 U. S. 127, 135–136, cited in *Attorney General* v. *Trustees of Boston Elevated Railway,* 319 Mass. 642, 667. Compare, for recovery of public funds paid under mistake of law, but without judicial sanction, *Attorney General* v. *Trustees of Boston Elevated Railway, supra,* and cases cited.

2. The coming of another fiscal year does not make the matter moot. The plan by its term fixes the compensation of the affected employees. The procedure for amendment initiated in 1956 has been arrested by a decision of the selectmen the validity of which is under attack. If that decision was invalid there is no basis for asserting that the plan has been amended to prescribe higher rates of pay for any period.

3. The votes of the limited town meeting to amend the compensation and classification plan were subject to the referendum procedure.

These votes were taken under the provisions of G. L. (Ter. Ed.) c. 41, § 108A, and c. 10, § 3, of the by-law constituting the plan, and the issue is the meaning of the phrase "by vote of the town at a town meeting" as used in § 108A.[1]

---

[1] The statute reads: "A city by ordinance and a town by by-law may establish, and from time to time amend, a plan classifying any or all positions, other than those filled by popular election and those under the direction and control of the school committee, into groups and classes doing substantially similar work or having substantially equal responsibilities. Such city or town may in like manner or in a city by vote of the city council, subject to the provisions of its charter, and in a town by vote of the town at a town meeting, establish, and from time to time amend, a plan establishing minimum and

Although the statute would control, there is no difference in the meaning of the slightly different phrase of the by-law "by the Town Meeting"; a vote is required in any case.

The concept of a town meeting divided in time and method of action on articles for the meeting, but called under a single warrant, is well understood in this Commonwealth. General Laws (Ter. Ed.) c. 39, § 23, provides that "A town which accepts this section or has accepted corresponding provisions of earlier laws may provide that the election of town officers shall take place at any time within seven days before or after the annual meeting held for the transaction of other business. The time and place of holding such election and vote shall be stated in the warrant for the annual town meeting and such election and vote shall be deemed parts of the annual town meeting."

The use of ballots in the course of a town meeting for the election of officers and the determination of other matters is a long standing practice. The convenience of providing that the balloting be at a different time has been recognized by statute. General Laws (Ter. Ed.) c. 39, § 22, provides: "A town may by by-law designate the hour at which the annual town meeting shall be called, and, subject to section sixty-four of chapter fifty-four, may by vote or by-law designate the hours during which the polls shall remain open; and may provide that all business, except the election of such officers and the determination of such matters as by law are required to be elected or determined by ballot, shall be considered after a certain hour, or by adjournment to another day." The statute also provides that towns may vote to use official ballots. G. L. (Ter. Ed.) c. 41, § 6. Thus it is standard and common procedure in this Commonwealth to call and conduct a town meeting in two parts, at one of which the exclusive business is the conduct, over a

maximum salaries to be paid to employees in positions so classified . . . ." Section 2 of the by-law adopts the classification of the civil service commission as the classification plan and section 3 states that schedules in following sections "with such amendments as may be made thereto from time to time by the Town Meeting" constitute the compensation plan.

specified number of hours, of a secret ballot poll, much as
an election for city, State or national officers is conducted.
Although this has none of the aspects of a meeting in the
usual sense, the business done is that which is a firmly
established part of the town meeting.

Watertown's limited, or representative, town meeting form
of government was created by and operates under Spec.
St. 1919, c. 205, as amended by St. 1920, c. 638, and St. 1924,
c. 358.[1] This statute, we think, provides for two kinds of

---

[1] Pertinent parts of this statute follow: "Section 3. Any town meeting
held under the provisions of this act, except as otherwise provided herein,
shall . . . be limited to the voters elected under section two together with the
following [ex officio members of the limited town meeting] . . . . The town
clerk shall notify the town meeting members of the time and place at which
town meetings are to be held . . . . Notice of every adjourned town meeting
shall be posted by the town clerk . . . . All town meetings shall be pub-
lic. . . . Subject to such conditions as may be determined from time to time
by the members of the limited town meeting, any voter of the town who is
not a town meeting member may speak, but he shall not vote. . . . Section 5.
The articles in the warrant for every town meeting, so far as they relate to
the election of the moderator, town officers, and town meeting members . . .
referenda, and all matters to be acted upon and determined by ballot, shall
be so acted upon and determined by the voters of the town in their respective
precincts. All other articles in the warrant for any town meeting shall be
acted upon and determined exclusively by town meeting members at a meeting
to be held at such time and place as shall be set forth by the selectmen in the
warrant for the meeting, subject to the referendum provided for by section
eight. Section 6. A moderator shall be elected by ballot at each annual town
meeting and shall serve as the moderator of all town meetings . . . . If a
moderator is absent, a moderator pro tempore may be elected by the town
meeting members. . . . Section 8. Any vote, except a vote to adjourn,
passed at any limited town meeting shall not become operative until after
the expiration of five days, exclusive of Sundays and holidays, from the disso-
lution of the meeting. If . . . [a proper petition for referendum action is
filed with the selectmen within five days] the selectmen, after the expiration
of five days, shall forthwith call a special meeting for the sole purpose of
presenting to the voters at large the question or questions so involved. . . .
[A]ll votes upon any questions submitted shall be taken by ballot . . . . The
questions so submitted shall be determined by vote of the same proportion of
the voters at large voting thereon as would have been required by law had
the question been finally determined at a representative town meeting. The
questions so submitted shall be stated upon the ballot in the same language
and form in which they were stated when presented to said limited town
meeting by the moderator, and as they appear upon the records of the said
limited town meeting. If such petition be not filed within the said period of
five days, the vote in the limited town meeting shall become operative and
effective upon the expiration of the said period. Section 9. The town . . .
shall have the capacity to act through and to be bound by its said town meet-
ing members who shall, when convened from time to time as herein provided,
constitute limited town meetings; and such limited town meetings shall exer-
cise exclusively, so far as will conform to the provisions of this act, all powers
vested in the municipal corporation. Action in conformity with all provisions
of law . . . applicable to the transaction of town affairs in town meetings
shall, when taken by any limited town meeting in accordance with the pro-

town meeting action, following the established concept, one of which consists of the balloting by the voters at large, at a time and place separate from the meetings of the town meeting members, on all those matters, including referenda, which require submission to all the voters. Thus § 5 provides: "The articles in the warrant for every town meeting, so far as they relate to the election of the moderator, town officers, and town meeting members . . . referenda, and all matters to be acted upon and determined by ballot, shall be so acted upon and determined by the voters of the town in their respective precincts. All other articles in the warrant for any town meeting shall be acted upon and determined exclusively by town meeting members at a meeting to be held at such time and place as shall be set forth by the selectmen in the warrant for the meeting, subject to the referendum provided for by section eight."

The strong implication from the statement in § 5 that referenda questions are to be placed before the voters in a town meeting warrant is made emphatic by the direction of § 8 that the selectmen, if the proper preliminary steps are taken, "shall forthwith call a *special meeting* [emphasis added] for the sole purpose of presenting to the voters at large the question or questions so involved." [1] The act in setting up the limited town meeting recognizes that Watertown's town meeting action will be more extensive in scope than the proceedings of the limited meeting, for it provides in § 3, "Any town meeting held under the provisions of this act, *except as otherwise provided herein* [emphasis added], shall . . . be limited to the . . . [members of the limited town meeting]." And § 9 provides that ". . . such limited

visions of this act, have the same force and effect as if such action had been taken in a town meeting, open to all the voters of the town as heretofore organized and conducted. Section 10. This act shall not abridge the right of the people of Watertown to hold general meetings, as that right is secured to them by the constitution of the commonwealth; nor shall this act confer upon any limited town meeting in Watertown the power finally to commit the town to any measure affecting its municipal existence or changing the form of its government, without action thereon by the voters of the town at large, using the ballot and check lists therefor."

[1] The warrant for the meeting for the referendum on the original votes was appropriately entitled "Warrant for Referendum Town Meeting."

town meetings shall exercise exclusively, *so far as will con-form to the provisions of this act* [emphasis added], all powers vested in the municipal corporation." In places in the statute (see § 3) the words "town meeting" are used to refer only to the limited meeting, but the context explains this and prevents the extension of the narrow meaning to the other uses of the words. In § 8, where the distinction is important, the limited meeting is in every case so named.

If the use of the phrase "by vote of the town at a town meeting" were deemed to indicate an intention that the vote of the limited town meeting should be exclusive and final, much of the business of the town would be concluded by the vote of the limited meeting. General Laws (Ter. Ed.) c. 40, § 5, as amended, provides that "A town may *at any town meeting* appropriate money for the exercise of any of its corporate powers . . ." (emphasis added). As noted above, nothing turns on the absence of the words "by vote" as that is the way a town meeting acts. The vote of the limited meeting would be conclusive also in respect of a number of other decisions as to which the relevant statute specifies that the necessary action is to be by, in, at, or of, a "town meeting" rather than "by the town." See G. L. (Ter. Ed.) c. 40, § 4A (authorizing contracts with other government units for performance of public service); c. 40, § 6F (permission to make repairs on private ways); c. 40, § 12B (formation of public beach district); c. 40, § 13A (appropriations for workmen's compensation insurance funds); c. 40, § 13B (appropriation for residence of school physician); c. 40, § 44 (establishment of improvement district); c. 40B, § 3 (membership in planning district); c. 41, § 6 (use of official ballots); c. 41, § 21 (election of selectmen when authorized to act as or appoint other officers); c. 41, § 70 (election of planning board); c. 41, § 81A (vote to establish planning board); c. 41, § 81E (adoption of official map); c. 41, § 82 (establishment of art commission). See c. 41, §§ 69C and 69F, for provisions for town meeting action in the first instance by ballot.

In the entire context it is plain that G. L. (Ter. Ed.) c. 108A in prescribing action "by vote of the town at a town meeting" includes the voting of voters at large of Watertown at a referendum town meeting.

The significance of *Sampson* v. *Treasurer & Receiver General*, 282 Mass. 119, is, we think, contrary to the contention of the respondents, to confirm the foregoing construction. There the Legislature provided that St. 1930, c. 419, should take effect "upon its acceptance by a majority of the town meeting members of the town of Weymouth present and voting thereon at a meeting legally called for the purpose" and we held that the Legislature meant what it said in making use of the "members" of the limited meeting, that it "did not deal with them acting as a town meeting," and that the relevant provisions for referenda were "applicable only to town meeting action." In distinguishing St. 1932, c. 193, "where the power to accept is given to a majority of town meeting members of Winchester voting 'at a town meeting of said town'" (page 123), we emphasized the special nature of the provision applicable in Weymouth.

4. There is nothing in the contention of the respondents that the compensation rates for 1956 were fixed by votes at the 1956 annual meeting under article 3, as to which no referendum petition was filed. The vote under that article was that "the following items as shown in the schedule be and hereby are appropriated for the use of the various town departments for the current year." The amounts appropriated were such amounts as would be needed if the new and higher compensation rates were to become effective. This vote made it possible to pay these rates (see G. L. [Ter. Ed.] c. 44, § 31); it did not authorize the rates. If prior to the adoption of the plan there was no statutory or by-law limitation on what a department head might pay an employee, the appropriation was the only authorization needed for a particular wage or salary. The existence of the plan ended that effect of the appropriation. There could be no implication that a vote under article 3 was in-

tended as an amendment of the plan.  This would be so in the absence of articles to amend the plan and raise rates; the presence of those articles in the warrant makes it emphatic.

5. As the statute required the calling of the town meeting to vote on the referenda and the petitioners were not foreclosed by the declaratory decree, there was no room for the exercise of discretion to deny the writ.  *Elmer* v. *Commissioner of Insurance,* 304 Mass. 194, 199.  *Massachusetts Society of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine,* 330 Mass. 601, 605–606.

6. The judgment appealed from is reversed.  Judgment is to be entered in the Superior Court directing the respondents to place before the voters at large at a town meeting not later than the annual 1958 meeting, the referenda questions presented in the petition therefor, in accordance with Spec. St. 1919, c. 205, as amended.

*So ordered.*