ROBERT C. BLOMQUIST & others *vs.* TOWN OF ARLINGTON.

Middlesex. December 2, 1958. — February 27, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Municipal Corporations,* Town meeting, By-laws and ordinances, Em-
ployees. *Law or Fact. Evidence,* Judicial notice. *Arlington.*

In so far as statements by a master referred to town by-laws whose con-
tents were not the subject of findings, the statements were findings of
fact binding on this court, but in so far as the statements embraced
the construction of by-laws properly before this court, they were
rulings of law not binding upon this court. [597]
There can be no judicial notice of town by-laws. [597]
A provision in the "Rules" for town meetings contained in the by-laws
of Arlington, that the "duties of the moderator, and the government
of the town meeting, not specially provided for by law, or by . . .
[such] rules, shall be determined by the rules of practice contained in
Robert's Rules of Order," could not govern the number of votes neces-
sary for substantive action by the town, and at a limited town meet-
ing in that town, which had the standard form of representative town
meeting government under G. L. c. 43A, a vote to amend a by-law by a
majority of the town meeting members present and voting but by less
than a majority of the entire number of town meeting members was
valid and effective notwithstanding that the number of votes required
for an amendment of a by-law was not so "specially provided for"
and Robert's Rules of Order provided that a by-law might "be amended
at any regular business meeting by a vote of the majority of the entire
membership." [598–599]
Following acceptance by Arlington of St. 1952, c. 503, establishing therein
a town manager form of government and providing in § 15 (d) that
"subject to the classification plan as established now or hereafter by
the town by-laws, the town manager shall fix the compensation of all
town officers and employees," an amendment adopted at a town meet-
ing increasing the sums theretofore fixed for the minimum, first step
rate, and maximum salaries of members of the fire and police depart-
ments in the town's classification and pay plan established by by-law
under G. L. c. 41, § 108A, as amended through St. 1948, c. 351, did
not merely fix minimum and maximum salaries within which the town
manager could set the amounts payable, but itself fixed the amounts
payable, and entitled members of the departments who had reached
and were receiving maximum salaries at the time of the amendment
to be paid the increased maximum amounts thereafter; the classifica-
tion and pay plan was not inconsistent with such provision of St.1952,
c. 503, § 15 (d). [599, 601]

BILL IN EQUITY, filed in the Superior Court on May 6, 1957.

The suit was heard by *Lurie*, J., on a master's report.

*Harold E. Magnuson*, for the plaintiffs.

*Joseph A. Purcell*, Town Counsel, for the defendant.

WILKINS, C.J.  This bill in equity under G. L. c. 231A seeks a binding declaration as to the validity and effect of a vote of the annual town meeting purporting to amend the classification and pay plan[1] of the town of Arlington by increasing salaries.  The plaintiffs, nine in number, are permanent members of the fire or police department of the defendant, and have been chosen by the other members of those departments as a committee to protect and promote their interests under the vote.  The plaintiffs bring this suit in their individual capacities and seek to enforce only their own rights.  The defendant does not argue that other persons are interested and should be joined.  See *Kilroy* v. *O'Connor*, 324 Mass. 238.  The case was referred to a master, who filed a report, which was confirmed.  From a final decree declaring that the vote was invalid, the plaintiffs appealed.

The town has accepted (1) the standard form of representative town meeting government provided by G. L. c. 43A; (2) the provisions of G. L. c. 31, which bring all town employees, including the members of its fire and police departments, within the classified civil service; and (3) St. 1952, c. 503, entitled, "An Act establishing a town manager form of government for the town of Arlington."

In accordance with G. L. c. 41, § 108A (as amended through St. 1948, c. 351), a vote of the annual town meeting in 1949 adopted, as part of the by-laws, article 7C entitled, "Classification and Pay Plan." [2]  At a special town meeting

---

[1] The record does not refer consistently to the plan or plans.  There are references to "classification and pay plan," "classification plan," "pay plan," and "classification plan and pay plan."

[2] The first three sections of article 7C are: "Section 1.  The Classification Plan.  The official classification plan when established by vote of the town, shall consist of a classification for positions in the service of the town and shall be listed in a schedule to be known as schedule A, and made a part hereof.  Section 2.  The Pay Plan.  The official pay plan, when established by vote

later in 1949 the classification plan was adopted as article 7C, § 1, schedule A, and the pay plan was adopted as article 7C, § 2, schedule B. These were later amended from time to time.

The disputed vote occurred at an adjourned session of the annual town meeting, duly called and held on March 20, 1957. The vote, which is set forth in a footnote,[1] was to increase the minimum, step rate 1, and the maximum salaries for grades PF 2, PF 3, PF 4, PF 5, and PF 6 in the classification plan, article 7C, § 1, schedule A, and in the pay plan, article 7C, § 2, schedule B.[2] Upon the motion, 106 votes were in the affirmative, and 91 were in the negative. The moderator declared that the motion was lost, because it lacked a majority of the entire membership of 251, which he ruled was necessary to amend a by-law under Robert's Rules of Order.

of the town, shall consist of the minimum and maximum salaries to be paid to all employees in any position included in the classification plan, as such salaries shall, from time to time, be established by vote of the town. Said salaries shall be set forth in schedule B. . . . Section 3. Amendment of the Plans. The classification plan, or the provisions included herein for the administration thereof, may be amended in the manner provided by law, or in the manner provided by the by-laws of the town, whichever is applicable. The minimum and maximum salaries to be set forth in the pay plan may be established or changed by vote of the town at a town meeting, or as provided by law, whichever is applicable."

[1] "That the classification plan — schedule A and pay plan — schedule B as established by article 7C of the by-laws be and hereby are amended by striking out the words and figures 'minimum — $3,776' 'step 1 — $4,094,' and 'maximum — $4,428' where they appear in grade PF 2 of said schedules and inserting in place thereof the words and figures 'minimum — $4,100,' 'step 1 — $4,400' and 'maximum — $4,800'; and by striking out the words and figures 'maximum — $4,852' where they appear in grade PF 3 of said schedules and inserting in place thereof the words and figures 'maximum $5,300'; and by striking out the words and figures 'maximum — $5,178' where they appear in grade PF 4 of said schedules and inserting in place thereof the words and figures 'maximum — $5,800'; and by striking out the words and figures 'maximum — $5,640' where they appear in grade PF 5 of said schedules and inserting in place thereof the words and figures 'maximum — $6,300'; and by striking out the words and figures 'maximum — $6,848' where they appear in grade PF 6 of said schedules and inserting in place thereof the words and figures 'maximum — $7,500.'"

[2] Before the vote schedule B contained the following:

PF — annual (police and fire)

| Grade | Minimum | Step 1 | Maximum |
|-------|---------|--------|---------|
| PF 1 | $2286 | $2372 | $2460 |
| PF 2 | 3776 | 4094 | 4428 |
| PF 3 | | | 4852 |
| PF 4 | | | 5178 |
| PF 5 | | | 5640 |
| PF 6 | | | 6848 |

. Section 9 of article 2 of the town by-laws, entitled "Rules for Government of Town Meetings," is: "The duties of the moderator, and the government of the town meeting, not specially provided for by law, or by the foregoing rules, shall be determined by the rules of practice contained in Robert's Rules of Order Revised (Seventy-Fifth Anniversary Edition), so far as they are adapted to the condition and powers of the town." In this edition of Robert's Rules is the following: "68. Amendments of Constitutions, By-laws, and Rules of Order. Constitutions, by-laws, and rules of order, that have been adopted and contain no rule for their amendment, may be amended at any regular business meeting by a vote of the majority of the entire membership; or, if the amendment was submitted in writing at the previous regular business meeting, then they may be amended by a two-thirds vote of those voting, a quorum being present."

The master found, in so far as they are questions of fact and material, (1) that whether a majority of the entire membership or a majority of those present and voting is required to amend the classification plan, or to establish or change the minimum and maximum salaries set forth in the pay plan, is a question involving the government of the town meeting which is not specifically provided for by statute or by any provision of the by-laws of the town, and (2) that a requirement of a vote of the majority of the entire membership at a regular business meeting, to amend by-laws that have been adopted and contain no rule for their amendment, is adapted to the condition and powers of the town. In so far as these two statements reflect the contents of by-laws which are not made the subject of findings, they are findings of fact which we must accept. We have no knowledge of by-laws beyond the extent to which they are in evidence or findings properly brought to our attention. *Cerwonka* v. *Saugus,* 316 Mass. 152, 153. *Sunderland* v. *Building Inspector of No. Andover,* 328 Mass. 638, 641. But in so far as these two statements embrace the construction of by-laws properly before us or of the legal effect of statutes, they are rulings of law not binding upon us.

1. The first issue is whether the vote was valid. We pass by the questions whether the pay plan is part of a town by-law; whether figures relating to salaries in the classification plan are surplusage; and whether the reference to the classification plan in the vote of March 20, 1957, also is surplusage.

Coming directly to § 68 of Robert's Rules of Order Revised, we are at once struck by its dubious application to town meeting government. The phrase "regular business meeting" would be an inept description of a town meeting, whether annual or special. The phrase "previous regular business meeting" would be even more inept. The two phrases in the same sentence must refer to the same type of meeting. Even by forced construction, the phrase "previous regular business meeting" would run counter to statute and to settled law. Literally it would embrace a previous town meeting which after completion of the warrant had adjourned without day. By G. L. c. 39, § 10 (as amended through St. 1954, c. 32), "The warrant for all town meetings shall state . . . the subjects to be acted upon . . . . No action shall be valid unless the subject matter thereof is contained in the warrant." This means that "the subjects to be acted upon must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal." *Burlington* v. *Dunn*, 318 Mass. 216, 219. *Loring* v. *Westwood*, 238 Mass. 9, 10. Section 68 should not be construed so as to circumvent this principle, nor would its scope be confined to adjourned town meetings where the warrant had not been completed.

The facts of this case, however, do not compel a decision based upon tenuous interpretations. This is because we are of opinion that the imposition of a requirement of a vote of a majority of the entire membership is one of substance and not of practice. By § 9 of article 2 of the town by-laws the topics made subject to "the rules of practice contained in Robert's Rules" are "the duties of the moderator, and the government of the town meeting." These are procedural matters. The legal effect of any given number of votes upon

any subject considered is one of substantive law. *Ogden* v. *Selectmen of Freetown,* 258 Mass. 139, 141. Section 9, if given the meaning as ruled by the moderator and as now contended by the town, would be in excess of the authority conferred by the enabling act. "A town may pass by-laws, subject to this section, for the regulation of the proceedings at town meetings." G. L. (Ter. Ed.) c. 39, § 15.

Cases relied upon by the defendant which deal with procedural matters, and in which there is no attempt to impair the authority of the town meeting to act by majority vote, are not inconsistent with our holding but tend to confirm it. *Walsworth* v. *Casassa,* 219 Mass. 200 (no change in by-law unless "adopted by two consecutive legally called town meetings" at least two months apart). *Loring* v. *Westwood,* 238 Mass. 9 (by-law making estimate a condition precedent to an appropriation). Compare *Young* v. *Westport,* 302 Mass. 597. In *Merrill* v. *Lowell,* 236 Mass. 463, there was an interpretation of a statute, constituting the city charter.

We conclude that the vote was valid.

2. The next issue the master entitles, "The right of plaintiffs to be paid at maximum." Upon this he reported certain questions of law which were not reached by the trial judge. Two of these are: (1) Are the increased salary figures inserted in the classification plan and the pay plan merely the maximum and minimum within which the town manager can fix salaries? (2) Is the town manager compelled to pay the maximum as amended to all those members of the police or fire department who had previously reached maximum salary and received compensation at that rate before the increase? We think that the first question should be answered in the negative and the second in the affirmative.

There now become material other facts found by the master. Those parts of schedule B of the pay plan relating to members of the police and fire departments originally contained figures representing established minimum, step 1, step 2, and maximum salaries for the respective grades. When the classification plan and the pay plan were originally established by vote of the town meeting in 1949 the members

of those two departments who had served at least three years as permanent civil service appointees were placed at maximum salary in their respective grades. Up to March, 1953, employees serving under the classification and pay plan were eligible for a step rate increase after serving one year in a grade. Sometime in 1953 the town manager dropped one step rate for members of the two departments, so that they became eligible for maximum after two years' service, and all members thus eligible were paid at maximum. Later the town meeting amended the classification and pay plan so as to provide only three step rates of pay (minimum, step 1, and maximum) within a particular grade. Thereafter members of the police and fire departments attained maximum salary, as amended from time to time by the town meeting, upon serving two years in any grade. Since the establishment of the classification plan and pay plan all members who had been originally placed at, or subsequently attained, maximum salary have been so paid in their respective grades under the plans as amended and changed from time to time by vote of the town meeting.

The source of the town's authority to establish the classification and pay plan is G. L. c. 41, § 108A (as amended through St. 1948, c. 351). The authority is express that "a town by vote of the town at a town meeting, [may] establish, and from time to time amend, a plan establishing minimum and maximum salaries to be paid to employees in positions so classified, and such salary plan may provide for the attainment of such maximum salaries by periodical step-rate increases based on length of service."[1] As we said

---

[1] The statute reads: "A city by ordinance and a town by by-law may establish, and from time to time amend, a plan classifying any or all positions, other than those filled by popular election and those under the direction and control of the school committee, into groups and classes doing substantially similar work or having substantially equal responsibilities. Such city or town may in like manner or in a city by vote of the city council, subject to the provisions of its charter, and in a town by vote of the town at a town meeting, establish, and from time to time amend, a plan establishing minimum and maximum salaries to be paid to employees in positions so classified, and such salary plan may provide for the attainment of such maximum salaries by periodical step-rate increases based on length of service. Nothing in this section shall be construed to conflict with the provisions of chapter thirty-one. Any by-law adopted under the provisions of this section shall not be subject to section thirty-two of chapter forty."

in *Robinson* v. *Selectmen of Watertown,* 336 Mass. 537, 541, "The plan by its term fixes the compensation of the affected employees."

The defendant argues that the compensation of the plaintiffs is controlled by the special statute, St. 1952, c. 503, § 15 (d), which reads: "Subject to all applicable provisions of chapter thirty-one of the General Laws, and subject to the classification plan[1] as established now or hereafter by the town by-laws, the town manager shall fix the compensation of all town officers and employees subject to removal by him." It should be noted that § 46 of c. 503 provides, "All laws, by-laws, rules and regulations in force in the town of Arlington when this act takes effect, not inconsistent with its provisions, whether enacted by authority of the town or any other authority, shall continue in full force and effect until otherwise provided by law, by-law or vote . . . ." We perceive no inconsistency between the classification and pay plan and c. 503, § 15. The plaintiffs at the time of the vote had all attained the maximum for their respective grades. The town meeting, as permitted by § 108A, raised the maximum for those grades by amending the plan, to which the power of the town manager was made subject by c. 503, § 15.

The plaintiffs in their brief contend that "administrative officials, such as boards or heads of departments, do not have any authority to fix salaries after such a pay plan has been established other than to specify the length of service required for increases from minimum to step rates or to attain maximum." In discharging our duty under the present bill, we are not confronted by any further question in this respect.

3. Before the master there was an issue as to "the necessity and adequacy of the appropriation" made at the 1957 annual town meeting. The record contains a stipulation (filed after the filing of the master's report) that there

---

[1] This must include the pay plan. We need not resolve the issue raised by the plaintiffs that the classification plan should not include the salary figures. It is enough for present purposes that in Arlington it does.

was a special town meeting on November 4, 1957, at which
it was voted: "That the town appropriate the sum of
$12,501.83 for personal services of members of the police
department and the sum of $17,031.90 for personal services
of members of the fire department for the purpose of com-
pensating the members of said departments at salaries pro-
vided for by the vote of the town of 106 in the affirmative
and 91 in the negative at the adjourned session of the 1957
annual town meeting held on March 20, 1957, under article 27
of the warrant for said annual town meeting, if said vote shall
be determined in the proceeding for a declaratory judgment
or decree of certain members of said departments now
pending in the Middlesex Superior Court to be legally
effective to amend the pay plan established under section 2,
article 7C of the by-laws of the town, for the period from
the effective date of said vote to the end of the year 1957,
said sums to be taken from available funds now in the
treasury and expended under the direction of the town
manager."

The defendant does not refer to the stipulation in its brief.
In the circumstances, we do not regard the third issue as one
presently requiring a binding declaration by us.

4. The several interlocutory decrees appealed from are
affirmed, and the final decree is reversed, and a new final
decree is to be entered in accordance with this opinion.

*So ordered.*