SALEM SOUND DEVELOPMENT CORPORATION *vs.* CITY
OF SALEM & others.[1]

No. 87-531.

Essex.   February 12, 1988. — September 20, 1988.

Present: ARMSTRONG, PERRETTA, & WARNER, JJ.

*Municipal Corporations,* City council, Lease of property. *Parliamentary
Procedure.*

Where a lease of municipal land, as executed by the mayor of a city, differed
in a substantial respect from the form of lease which arguably had been
approved by the city council, the lease was not enforceable against the
city. [399]

Where five years had elapsed after a city council arguably approved a lease
of certain municipal land, and no enforceable lease had been executed,
any lease of the land would require new approval by the council. [399-
400]

CIVIL ACTION commenced in the Superior Court Department
on July 26, 1984.

The case was heard by *Charles M. Grabau,* J., on a motion
to dismiss.

*Timothy J. O'Keefe* for the plaintiff.

*Douglas A. Randall (Roger H. Randall* with him) for the
city of Salem.

*Michael E. O'Brien* for the Mayor of Salem & another.

ARMSTRONG, J. In 1983 the then mayor of Salem forwarded
to the city council, for its approval, a proposed twenty-year
lease of land to the plaintiff for the construction of a marina
on Winter Island in Salem Sound. One of the provisions of
the lease restricted the size of the marina, which was "not [to]
include more than one hundred fifty (150) slips without the
express written consent of the City." The lessor was defined

---

[1] The mayor of Salem and the board of health of Salem.

as "the City of Salem, Massachusetts, acting through its Mayor, Jean A. Levesque."

The city council's committee on transportation amended the draft lease by deleting the words "without the express written consent of the City." The draft lease as amended came before the full council for approval. The vote of the eleven-member body was six in favor, five opposed. The council president, acting on the basis of a typewritten list of fourteen types of actions that required eight votes (i.e., two thirds) for approval, declared that the draft lease, as a "land lease" (the fourth item on the list), had failed of approval. One of the proponents gave notice that he would bring the matter up for reconsideration at the council meeting two weeks thence. At that meeting reconsideration was moved but ruled out of order. This ruling was challenged, but the challenge was later withdrawn. The city clerk recorded all these doings on the last page of the draft lease, concluding (and attesting): "Lease not adopted — Original vote and ruling of the chair stands."

The following day Mayor Levesque sent for a copy of the lease and was furnished, apparently, a copy that showed the annotations of the council, including the amendment and the council proceedings. Taking the position that a simple majority sufficed for council approval, the mayor and the plaintiff (by its corporate president) executed a retyped lease. Under their signatures appears an inscription, "Approved as to Legal Form Richard W. Stafford, Esq., City Solicitor." The executed lease was then given to the city clerk for filing. She inscribed at the bottom: "Not approved by City Council, Josephine R. Fusco, City Clerk." The executed lease contains the language that was deleted by the committee on transportation. Thus, it is identical to the lease originally submitted to the council for approval but different from that assertedly approved by the council's six to five vote.

The election of a new mayor several months later, apparently before any construction had commenced, signaled a change in the city's attitude. Boards refused to act on permit requests, taking the position that the lease was a nullity. The plaintiff sued the city and various officials both for damages and to com-

pel them to recognize the plaintiff's rights under the lease. On a "motion in limine," so called, which was treated as a motion to dismiss, a judge ruled that the lease had failed of council approval and was thus a nullity.

On appeal the plaintiff relies on a long line of cases which have held that the ruling of a moderator at a town meeting, declaring the effect of a counted vote, whether sufficient for approval or not, is of no binding effect. *Adams* v. *Townsend Schoolhouse Bldg. Committee*, 245 Mass. 543, 549 (1923). *Ogden* v. *Selectmen of Freetown*, 258 Mass. 139, 141 (1927). *Blomquist* v. *Arlington*, 338 Mass. 594, 598-599 (1959). *Cronin* v. *Tewksbury*, 401 Mass. 537, 540 (1988). "The public declaration of the vote in question included the statement of the question and the announcement of the number of votes cast on the one side and on the other. That vote stood as cast and declared and carried its own legal implications. The moderator was not clothed with any authority to interpret as matter of law the effect of the vote so declared." *Ogden* v. *Selectmen of Freetown*, 258 Mass. at 141. Contrast *Putnam* v. *Langley*, 133 Mass. 204, 206 (1882).

The city relies on an older line of cases, involving the proceedings of city councils or boards of aldermen, which suggests application of a different principle, treating the ruling of the chair as final where it has not been the subject of a challenge according to the usages of parliamentary procedure. (The Salem city council, by its rules, follows "Cushing's Manual.") See, e.g., *Williams* v. *Gloucester*, 148 Mass. 256, 260 (1889) ("It is the duty of the presiding officer to ascertain and declare the result of a vote unless the meeting directs some other mode; and when his declaration is assented to, and accepted by the meeting, and recorded, the record is evidence that the vote was duly passed"); *Keough* v. *Holyoke*, 156 Mass. 403, 405 (1892). Cf. *Kaeble* v. *Mayor of Chicopee*, 311 Mass. 260, 263 (1942). Town meetings are in some respects unique, and courts have recognized that adherence to some of the usages of parliamentary procedure is not necessarily to be expected of a lay body, not having continuity, largely unconversant with the finer conventions familiar to deliberative assemblies having

regular meetings, and functioning within relatively rigid constraints, both as to time and as to scope of action. *Wood* v. *Milton*, 197 Mass. 531, 532-535 (1908). *Blomquist* v. *Arlington*, 338 Mass. at 598.

The question is one we need not now decide, nor need we address the serious underlying issue whether the land in question, part of a larger tract accepted by Salem at one time as park land, was either inalienable or inalienable without legislative approval.[2] G. L. c. 45, § 7; *Lowell* v. *Boston*, 322 Mass. 709, 729-731 (1948). Whatever rights the plaintiff has stem from the executed lease. It was not the lease assertedly approved by the city council. The amendment made in council was not, in our view, without substance. With the amendment, the number of slips in the marina could not be increased beyond one hundred fifty without approval of the mayor and the city council, whose concurrent action would be as necessary for amendment of the lease as it was for entering into it originally. The deleted language authorized an increase in the number of slips if approved in writing by the City, but the lease, in the definition of "lessor," contemplated that the city would act through the mayor. On this reading further concurrence by the council would not be necessary. That is a natural construction: the deleted language would be useless otherwise. The lease bore the indicia of careful draftsmanship. It is not to be presumed that the language was intended to have no effect, *Koshland* v. *Columbia Ins. Co.*, 237 Mass. 467, 475 (1921); *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501-502 (1939); *Tupper* v. *Hancock*, 319 Mass. 105, 108 (1946), or that it was deleted by the council as mere surplusage. As the executed lease was different in a substantial respect from that which arguably had council approval, it is an unauthorized lease not enforceable against the city. Any new lease will

---

[2] Nor need we decide a question not argued by Salem: whether a conveyance of land acquired by the city by gift, as here, rather than by purchase, as in *Oliver* v. *Mattapoisett*, 17 Mass. App. Ct. 286 (1983), is subject to the two-thirds approval requirement of G. L. c. 40, § 15.

require a new council approval; it would not be reasonable to act at this time on the basis of a council approval five years old.

*Judgment affirmed.*