Faneuil Investors Group, Limited Partnership *vs.* Board of Selectmen of Dennis & another.[1]

No. 08-P-1222.

Suffolk. March 10, 2009. - September 28, 2009.

Present: Lenk, Mills, & Katzmann, JJ.

Further appellate review granted, 455 Mass. 1106 (2009).

*Real Property,* Reverter, Conveyance, Mortgage, Deed. *Mortgage,* Real estate. *Deed,* Condition. *Municipal Corporations,* Town meeting.

In a civil action filed in the Land Court by a plaintiff seeking to reinstate a mortgage on property, formerly owned by a town's housing authority, that had reverted to the town after violation of restrictions set forth in the deed from the town to the housing authority (namely, the housing authority's grant of a mortgage presently held by the plaintiff), the judge properly concluded that the housing authority's grant of a mortgage was a conveyance that triggered the reverter provision in the deed, where under established Massachusetts law, a mortgage is a conveyance of title [264-267], and where the language of the reverter provision at issue was not ambiguous and gave notice that the grant of a mortgage would trigger it [267-268]; further, the town's board of selectmen acted within the bounds of its authority in drafting the deed [268-269], and the reverter provision was not different in a substantial respect from that approved and authorized by a town meeting vote [269-270].

Civil action commenced in the Land Court Department on April 24, 2008.

A motion for lis pendens and a motion to dismiss were heard by *Keith C. Long,* J.

*Dana Alan Curhan* for the plaintiff.

*Jeffery D. Ugino (Kathleen M. O'Donnell* with him) for the defendants.

Katzmann, J. Plaintiff Faneuil Investors Group, Limited Partnership (Faneuil), filed an action to reinstate the mortgage it had held on property formerly owned by the Dennis Housing

---

[1]Dennis Housing Authority.

Authority (DHA) and described in a deed from the town of Dennis (town) to the DHA. The property reverted to the town after violation of the restrictions set forth in the deed, namely, the grant of a mortgage by the DHA to Citizens Bank of Massachusetts (Citizens). Faneuil is the current holder of the note and mortgage by assignment from Citizens.

Faneuil filed a verified complaint in the Land Court against members of the town's board of selectmen (board) and the DHA, seeking, inter alia, a declaratory judgment that a right of reverter — contained in the deed — was not triggered by the mortgage. Faneuil also filed a motion for endorsement of a memorandum of lis pendens. The judge ruled that Faneuil did not have a valid mortgage on the property and ordered all references to that mortgage and Faneuil's other interests struck from the certificate of title. Additionally, the judge denied the lis pendens motion and dismissed Faneuil's claims under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Faneuil now appeals. We affirm.

*Background.*[2] The property is a 6.41-acre parcel of land that the town acquired by eminent domain on August 14, 2001, with the consent of its prior owners. The taking occurred pursuant to a town meeting vote which, inter alia:

> "authorize[d] the [board] to acquire by eminent domain . . . for the purposes of affordable housing, the [6.41 acre parcel] . . . ; and further . . . authorize[d] the [board] to transfer ownership and/or control to the [DHA] . . . for the purpose of providing affordable housing . . . [and specified that] *[a]ny deed transferring the property shall provide that in the event the property ceases to be used for the purposes provided herein, the title to said parcel shall revert to the [town], acting by and through its [board]*" (emphasis supplied).

The town subsequently took the property and, by deed dated February 22, 2002, conveyed it for nominal consideration to the DHA. The conveyance, however, explicitly was made subject to "a condition subsequent, with a possibility of reverter retained by the Town," which, in pertinent part, stated:

> "The Town shall have the right to enter upon the Property

---

[2]We recite the undisputed facts from the judge's careful memorandum.

and revest title back to it upon the occurrence of any of the following events:

"(1)   The Grantee ceases to exist or function as a municipal housing authority, or be recognized as a housing authority by the Commonwealth of Massachusetts Department of Housing and Community Development and its successors.

"(2)   *The Property is conveyed or transferred without the written consent of the [board].*

". . .

"Notwithstanding the foregoing, no such entry shall occur until such time as the Town has notified the [DHA] of such occurrence and the [DHA] fails to cure such event to the reasonable satisfaction of the Town within thirty (30) days of receipt of such notice." (Emphasis supplied.)

The deed was executed by the board, with its conditions "accepted and agreed to as perpetual conditions by the [DHA] as authorized by vote of its board."[3] The deed was filed with the registry of deeds on March 7, 2002, and noted on the certificate of title's encumbrance sheet with the "restrictions."

Prior to the conveyance of the property from the town to the DHA, the DHA secured a $400,000 construction and permanent loan commitment from Citizens. The commitment letter provided that "the [l]oan shall be secured by a valid first mortgage upon the fee simple title on the [p]roperty," with "[t]he final legal description of the [p]roperty [to be] approved by [Citizens] and its counsel." The commitment also required the DHA to provide Citizens with "a Standard American Land Title Association

---

[3]The deed from the town to the DHA was one for a "determinable or qualified fee," an estate to continue until the happening of a certain event, which, in its pure form, causes the estate to cease by its own limitation upon the happening of that event without a re-entry by the grantor, see *First Universalist Soc. of N. Adams* v. *Boland*, 155 Mass. 171, 174 (1892); 1 Jones, Real Property §§ 628-629 (Bowen-Merrill Co. 1896), with a condition subsequent (notice by the town that the "event" had occurred, and the DHA's failure to cure within thirty days after receipt of the notice). Both types of estates (determinable or qualified fee and deeds with a condition subsequent) are recognized and enforced in Massachusetts. See *First Universalist Soc., supra* at 175-176.

. . . mortgagee's title policy binder containing no exceptions other than those approved by [Citizens]." Under the terms of the commitment, Citizens had "no obligation to close the Loan in the event of . . . (iv) [the] failure of [the DHA] or any Guarantor to comply with the terms and conditions of [the] commitment letter; or (v) [if] any collateral offered for the Loan or any documents, instruments, agreement or information furnished to [Citizens] pursuant to [the] commitment [was] not in all respects in form and substance satisfactory to [Citizens]."

By subsequent agreement between Citizens and the DHA, the time for performance and completion of the closing was extended to March 4, 2002. By that time, the property had been deeded from the town to the DHA. Citizens closed the loan with knowledge of the limitations on the DHA's interest. The DHA's certificate of title, issued on March 7, 2002, referenced the DHA's deed (explicitly noting on the encumbrance sheet a description of the deed as "restrictions") and, immediately thereafter, the Citizens mortgage, the DHA's collateral assignment of contracts, licenses, permits, leasehold interests, and other rights to Citizens, and the Citizens financing statement. Citizens assigned all of these interests to Faneuil on July 11, 2007, as noted on the certificate of title.

On February 21, 2008, at the request of the board, town counsel sent notice to the DHA of the board's intent to exercise the right of reverter on the ground that the DHA impermissibly granted the mortgage to Citizens in contravention of provision 2 (provision or reverter provision) in the deed that prohibited the transfer of the property without the written consent of the board. On March 5, 2008, the DHA voluntarily conveyed the property to the town by means of a deed recorded on March 12, 2008.

The judge in the Land Court ruled that the mortgage was a "conveyance of title, *Maglione* v. *BancBoston Mort[.] Corp.*, 29 Mass. App. Ct. 88, 90-91 (1990), and [that] the mortgagee [could] only acquire such title as the mortgagor possesse[d] and [had] the capacity to grant, see *Coraccio* v. *Lowell Five Cents Sav[.] Bank*, 415 Mass. 145, 151-152 (1993); *Brewster* v. *Weston*, 235 Mass. 14, 17 (1920). . . . By the terms of [the] deed, the [DHA's] title terminated when it mortgaged the property to Citizens (a conveyance of title) without the written consent of the Board, the Board gave notice, the [DHA] failed to 'cure' within

thirty days, and the town reentered the property and revested title back to it." The judge further ruled that the reverter provision contained in the deed was authorized by the vote of the town meeting.

*Discussion.* Faneuil challenges the judge's denial of its motion for endorsement of a memorandum of lis pendens, dismissal of its claims, and striking of all references to its mortgage and other interests from the town's certificate of title, claiming, in essence, that (1) the mortgage did not trigger the reverter provision; and (2), even if the mortgage triggered the reverter provision, that provision was unauthorized and therefore unenforceable.

1. *Triggering of reverter provision.* The provision in the deed that is at the heart of this case provides for a reverter where "[t]he Property is conveyed or transferred without the written consent of the [board]." Faneuil argues that the judge erred in treating the mortgage as a conveyance that triggered the reverter.[4] Specifically, Faneuil contends that the reverter provision should not apply because (1) no Massachusetts appellate case has addressed whether the granting of a mortgage constitutes a conveyance of title as defined in a reverter provision such as the one at issue here, and case law from other jurisdictions supports the conclusion that the mortgage did not trigger the instant reverter provision; and (2) the language of the reverter provision is ambiguous.

a. *Mortgage theory.* General Laws c. 260, § 35, inserted by St. 1957, c. 370, defines a mortgage as a "conveyance made for the purpose of securing performance of a debt . . . ." Under our title theory of mortgages, "[a] mortgage of real estate is a conveyance of the title or of some interest therein defeasible

---

[4]The DHA asserts in its brief that Faneuil is barred from raising this claim on appeal because Faneuil's counsel conceded during a hearing below that under Massachusetts law, the granting of a mortgage is a "conveyance or transfer." Although it appears from the Land Court judge's memorandum that Faneuil may have conceded that the reverter provision, if authorized by the vote, was triggered by the mortgage, no transcript of the hearing was included with either appellee's brief or in the record appendix. Further, Faneuil's reply brief disputes that it waived its claim that the mortgage did not trigger the reverter clause. At oral argument, the board reiterated that the claim had been waived during the motion to dismiss hearing, but conceded that it could provide no record to prove it. Under the circumstances, we will consider the claim. See *Shawmut Community Bank, N.A.* v. *Zagami,* 30 Mass. App. Ct. 371, 372-373 (1991), *S.C.,* 411 Mass. 807 (1992).

upon the payment of money or the performance of some other condition."[5] *Murphy* v. *Charlestown Sav. Bank,* 380 Mass. 738, 747 (1980), quoting from *Perry* v. *Miller,* 330 Mass. 261, 263 (1953). See *Atlantic Sav. Bank* v. *Metropolitan Bank & Trust Co.,* 9 Mass. App. Ct. 286, 288 (1980). See also Eno & Hovey, Real Estate Law § 9.2 (4th ed. 2004); Mendler, Massachusetts Conveyancers' Handbook § 20.1 (4th ed. 2008). "Literally, in Massachusetts, the granting of a mortgage vests title in the mortgagee to the land placed as security for the underlying debt." *Maglione,* 29 Mass. App. Ct. at 90. "The payment of the mortgage note . . . terminates the interests of the mortgagee . . . and revests the legal title in the mortgagor." *Pineo* v. *White,* 320 Mass. 487, 489 (1946).

It is true that our case law has placed some limitations on the mortgagee's right to title. See, e.g., *Vee Jay Realty Trust Co.* v. *DiCroce,* 360 Mass. 751, 753 (1972), quoting from *Dolliver* v. *St. Joseph Fire & Marine Ins. Co.,* 128 Mass. 315, 316 (1880) (although "a mortgagee has legal title to the mortgaged real estate . . . 'as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands, at least till the mortgagee has entered for possession' "); *Negron* v. *Gordon,* 373 Mass. 199, 204 (1977) ("It is only for the purpose of securing the debt that the mortgagee is to be considered owner of the property"); *Maglione, supra* ("The mortgage splits the title into two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains"). However, while our cases may implicate a distinction in how whole the transfer or how absolute the conveyance, they also have made it clear that a mortgage is a conveyance. See *Geffen* v. *Paletz,* 312 Mass. 48, 53 (1942) (mortgage is "conveyance of real estate or of some interest therein"); *Krikorian* v. *Grafton Co-op. Bank,* 312 Mass. 272, 274 (1942) (mortgage is "conveyance in fee"); *Pineo, supra*

---

[5]"American courts have traditionally recognized one of three theories of mortgage law. Under the title theory, legal 'title' to the mortgaged real estate remains in the mortgagee until the mortgage is satisfied or foreclosed; in lien theory jurisdictions, the mortgagee is regarded as owning a security interest only and both legal and equitable title remain in the mortgagor until foreclosure. Under the intermediate theory, legal and equitable title remain in the mortgagor until a default, at which time legal title passes to the mortgagee." Restatement (Third) of Property (Mortgages) § 4.1, comment a (1997).

(mortgage is "conveyance in fee"); *Perry, supra* (mortgage "is a conveyance of the title or of some interest therein"); *Atlantic Sav. Bank, supra* (mortgage constitutes "deed of conveyance"). See generally Alperin, Summary of Basic Law § 15.116 (2008-2009 ed.) ("a mortgage takes the form of a deed of conveyance of real property, transferring a fee interest to the mortgagee").

Citing to cases from other States, Faneuil, in effect, argues that there is enough flexibility in title theory to treat a mortgage as a security interest, rather than as a transfer of title. Faneuil asserts that courts in a number of title theory States have recognized that the vesting of title upon the grant of a mortgage is a "legal fiction," and that title is not conveyed until foreclosure when "legal fiction" becomes "legal fact."[6] In support of this assertion, Faneuil cites cases from Arkansas, Connecticut, Georgia, and Pennsylvania. However, only two of these States, Connecticut and Pennsylvania, could be considered title theory jurisdictions, see Restatement (Third) of Property (Mortgages) § 4.1, note on mortgage theories followed by American jurisdictions (1997) (Connecticut follows title theory; Pennsylvania follows either intermediate or title theory; Georgia appears to follow lien theory; and it is unclear which theory Arkansas follows). Moreover, in neither of the two title jurisdiction cases cited by Faneuil did the court conclude that a mortgage did not trigger the transfer of title. Although the Supreme Court of Connecticut in *Red Rooster Constr. Co.* v. *River Assocs., Inc.*, 224 Conn. 563, 569 (1993), stated that "the law of mortgages is built primarily on a series of legal fictions," the court's conclusion that the term "owner" in a statute did not include a mortgagee, because the Connecticut Legislature intended that term to be given its commonly accepted meaning, did not veer from the "undisputed [principle of title theory] that a mortgagee . . . is

---

[6]Faneuil also asserts that other jurisdictions have held that a reverter provision is triggered not upon the granting of a mortgage, but upon a default. In support of this assertion, Faneuil cites three cases: *Lovlie* v. *Plumb*, 250 N.W. 2d 56 (Iowa 1977); *McPherson* v. *McPherson*, 117 Kan. 380 (1925); and *Land O'Lakes Dairy Co.* v. *County of Wadena*, 229 Minn. 263, aff'd, 388 U.S. 897 (1949). As the reverter provision at issue in each of these cases explicitly stated that title would revert if the mortgage was not satisfied or payment was not received in accordance with the parties' agreement, see *Lovlie, supra* at 58; *McPherson, supra* at 381; *Land O'Lakes Dairy Co., supra* at 266, these cases are distinguishable from the instant case and add no weight to Faneuil's argument.

deemed to have taken legal title upon the execution of a mortgage on real property." Similarly, while the Supreme Court of Pennsylvania in *Pines* v. *Farrell*, 577 Pa. 564 (2004), recognized that a mortgage can act as both a security interest and conveyance, see *id.* at 574, the court's conclusion that an administrative regulation construing the statutory phrase "property transfer" to include mortgages rested on the primary tenet of title theory that a mortgage is a conditional conveyance of property. See *id.* at 575.

The basic divide between title and lien theory is whether a mortgage is considered a conveyance of title. One of the crucial differences between lien theory and title theory is the point at which title is considered to have passed from the mortgagor to the mortgagee, respectively, at mortgage grant, or at foreclosure. See note 5, *supra*. Since the present case concerns language in a deed that specifies reverter upon conveyance, Faneuil's argument that the reverter provision should be triggered at foreclosure essentially boils down to asking this court to follow lien theory practice. We agree that a distinction between title and ownership does implicate a legal fiction. See *Vee Jay Realty Trust Co.*, 360 Mass. at 753; *Negron*, 373 Mass. at 204. However, what Faneuil calls a legal fiction has been recognized by our jurisprudence as a basis for title theory, and the understanding that a mortgage is a conveyance. Faneuil is asking us to follow a theory in direct conflict with established Massachusetts mortgage principles, and thus, it cannot prevail. See *Hampshire Natl. Bank of S. Hadley* v. *Calkins*, 3 Mass. App. Ct. 697, 699 (1975); *Erhard* v. *F.W. Woolworth Co.*, 5 Mass. App. Ct. 770, 770 (1977), *S.C.*, 374 Mass. 352 (1978).

b. *Language of reverter provision.* Faneuil next argues that the language of the reverter provision is ambiguous and does not give notice that the grant of a mortgage would trigger it.[7] Deed language can be ambiguous if "its meaning . . . is uncertain

---

[7]In support of this argument, Faneuil asserts that although courts in a number of jurisdictions have held that the granting of a mortgage triggers a reverter clause, in most instances the language in question specifically mentions the granting of a mortgage as a triggering event. As all the cases cited by Faneuil in support of this contention are from lien theory jurisdictions where both legal and equitable title remain with the mortgagor until foreclosure, or from intermediate theory jurisdictions where legal and equitable title

and susceptible of multiple interpretations." *Hamouda* v. *Harris*, 66 Mass. App. Ct. 22, 26 (2006).

We do not think that the language of the reverter provision in the instant deed is ambiguous.[8] The deed clearly and simply states that "[t]he Town shall have the right to enter upon the Property and revest title back to it upon the occurrence of any of the following events . . . [t]he Property is conveyed or transferred without the written consent of the [b]oard." Ambiguity arises only if we take to be true Faneuil's contention that "conveyed or transferred" does not necessarily apply to a mortgage grant. As discussed, *supra*, that is contrary to our well-settled law. Thus, we find no ambiguity here.

2. *Board's authority.* Faneuil argues that even assuming that the mortgage constituted a conveyance or transfer within the meaning of the reverter provision,[9] the provision is unenforceable because the board was limited to the language of the town meeting vote and the board did not have the authority to add conditions to the deed not specified by the vote.[10]

In determining that the board acted within the bounds of its authority in drafting the deed, the judge below relied heavily on the first clause of G. L. c. 40, § 3, which provides, in relevant part: "A town may hold real estate for the public use of the inhabitants and may convey the same by a deed of its selectmen thereto duly authorized." The judge stated, "G. L. c. 40, § 3 certainly contemplates the Board's ability to implement a town

remain in the mortgagor until a default (see note 5, *supra*), these cases, even if they support the proposition asserted by Faneuil, are inapposite to the case before us.

[8]While we reject Faneuil's argument that the provision is ambiguous, given the well-settled principle that "one dealing with officers of a municipality must at his peril ascertain their powers," *Elbe File & Binder Co.* v. *Fall River*, 329 Mass. 682, 686 (1953), see *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 (1976), we note that if Faneuil considered the provision ambiguous, it should have sought clarification before it assumed the mortgage.

[9]Faneuil's brief asserts that "the [town meeting] vote said noting [*sic*] about a reverter provision based on a transfer or conveyance of the property." As Faneuil's argument assumes that the reverter provision was triggered by the mortgage, and as we have rejected this argument in part 1, *supra*, we do not address that assertion here.

[10]We assume that Faneuil's repeated claim in its brief that the reverter provision was not authorized by the "board's vote" is a typographical error, and that Faneuil intended to assert that the reverter provision was not authorized by the "town meeting vote."

meeting vote in such a way, i.e., reasonable and consistent additional terms that enable the Board to more easily and efficiently carry out the town meeting intentions. The law does not expect or require [a] town meeting to involve itself in micromanagement of real estate transactions." We agree. As the statutory language is broad enough to encompass the board's ability to execute the town's intent with a certain degree of flexibility, we reject Faneuil's initial claim that the board was limited to the language of the town meeting vote.

We also reject Faneuil's contention that the language of the reverter provision is "different in a substantial respect" from that approved and authorized by the town vote. We agree that the test for determining if the provision was authorized by the town vote is whether the altered language is "different in a substantial respect" from that which was approved, and we note that if the challenged language has no effect on the execution of intent, then the difference is without substance. *Salem Sound Dev. Corp.* v. *Salem,* 26 Mass. App. Ct. 396, 399 (1988). We disagree, however, with Faneuil's conclusion that application of that test indicates the provision was not authorized.

The vote specified that "*[a]ny* deed transferring the property shall provide that in the event the property ceases to be used for [affordable housing], the title . . . shall revert to the [t]own" (emphasis supplied). Here, the deed to the DHA included two reverter clauses which, when read together, achieve the intent of the vote. The first clause provides for reverter if the DHA "ceases to exist or function as a municipal housing authority, or be recognized as a housing authority by the Commonwealth." This clause ensures that title reverts to the town if the DHA holds title to the property but no longer functions in the same capacity as the housing authority empowered to manage affordable housing. The second clause — the provision at issue here — anticipates a similar scenario where title to the property is held by someone other than the DHA. This provision establishes a mechanism by which the board can execute the intent of the vote as to any future deeds, i.e., ensure that *any* deed transferring the property provide for reversion in the event the property ceases to be used for affordable housing. By requiring that the DHA obtain the written consent of the board before conveying or transferring the

property, the board ensured that it had an opportunity and the power by which it could require that a subsequent deed, including a mortgage deed, contain the requisite restriction.[11] See *Pope v. Burrage*, 115 Mass. 282, 285 (1874) ("The power to do an act includes the power to do all such subordinate acts as are usually incident to or are necessary to effectuate the principal act in the best manner").

*Conclusion.* For the reasons stated above, we affirm the judgment.[12]

*So ordered.*

---

[11]The record before us is silent as to how funding was to be secured for the development of affordable housing on the instant property. Consistent with its affordable housing program, the board may have contemplated that the DHA would mortgage the property and, recognizing that a provision which tracked the language of the town vote could inhibit the DHA's ability to secure such financing and that a mortgage without appropriate restrictions would make the property vulnerable to uses other than affordable housing, the board crafted a provision that enabled it to secure the intent of the town vote, while providing flexibility that may have been necessary to obtain funding for the project.

[12]In its brief, the DHA requests double costs and reasonable attorney's fees. As we do not consider Faneuil's appeal frivolous, we deny that request.