AMESBURY vs. HATTER'S POINT CONDOMINIUM ASSOCIATION, MISC 20-000054

































 
 CITY OF AMESBURY, Plaintiff, v. HATTER'S POINT CONDOMINIUM ASSOCIATION, Defendants HATTER'S POINT MARINA PARKING, LLC, Interested Party
 MISC 20-000054 
 SEPTEMBER 29, 2021
ESSEX, ss.
SPEICHER, J.
DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT














 This case is about the drainage easement that everyone wants maintained, but by someone else. Bailey's Pond in Amesbury has an outlet consisting of a weir (a type of dam) with drainage structures in an easement running through the land of interested party Hatter's Point Marina Parking, LLC, ("Marina Parking") through a pipe under Merrimac Street, a public way in Amesbury, then through a drainage easement on the property of defendant Hatter's Point Condominium Association, (the "Condominium") and finally draining into the Merrimack [Note 1] River on the other side of the condominium property. The City of Amesbury claims the responsibility for maintaining the weir and drainage structures on the Marina Parking property and under Merrimac Street belongs to the Condominium, or, alternatively, the drainage easement area must be maintained by the servient owner, Marina Parking; the Condominium says it is the responsibility of the City or the servient owner, Marina Parking. Marina Parking says the Condominium is responsible. 





 The Condominium filed a summary judgment motion; the City filed an opposition and a cross-motion for summary judgment. Marina Parking filed an opposition to the Condominium's motion. A hearing was held before me on August 31, 2021, after which I took the pending motion and cross-motion for summary judgment under advisement. [Note 2] For the reasons stated below, I find and rule that the defendant Hatter's Point Condominium Association is solely responsible for maintaining the weir at Bailey's Pond, and the drain lines and drainage structures running from the weir through 77 Merrimac Street and under Merrimac Street to 60 Merrimac Street, as well as in the storm drainage area at 60 Merrimac Street. 





FACTS 





 The following material facts are found in the record for purposes of Mass. R. Civ. P. 56, and are undisputed for the purposes of the pending motions for summary judgment and motion to dismiss: 





1. Hatter's Point Marina Parking, LLC is the owner of property at 77 Merrimac Street in Amesbury. Marina Parking's property is also shown as Lot 9 on Land Court Plan No. 26500-D. [Note 3] 





2. Prior to ownership of the Marina Parking property by Marina Parking, the property had been owned by the Town of Amesbury [Note 4] via a tax taking and tax foreclosure pursuant to G. L. c. 60. On March 26, 2002, the tax title custodian for the Town of Amesbury conducted a public auction pursuant to G. L. c. 60, § 77B. Amesbury Hat Factory, LLC, a predecessor of Marina Parking, was the successful bidder at the auction. On September 19, 2002, Amesbury Hat Factory, LLC's assignee, Parking for Amesbury, LLC, entered into an agreement with the Town to purchase the property, and also to convey back to the Town, for nominal consideration, a portion of the property and two easements. One of the easements agreed to be conveyed to the Town was a thirty-foot wide drain easement from Merrimac Street to Bailey's Pond "to be used for enlargement, replacement, maintenance and removal of the outlet and drain line from Bailey's Pond to Merrimac Street..." The September 19, 2002 agreement was signed by the tax title custodian and by the mayor of the Town of Amesbury, and was recorded with the Essex South District Registry of Deeds. [Note 5]





3. On December 3, 2003, Parking for Amesbury, LLC and the Town of Amesbury executed an "Extension Agreement" by which they agreed that the time for performance of Parking for Amesbury, LLC's obligation to convey back to the Town a parcel and two easements, including the drainage easement, was extended to April 15, 2004. The Extension Agreement was signed by the tax title custodian and by the mayor of the Town of Amesbury. The Extension Agreement was also recorded with the Registry. [Note 6]





4. The Marina Parking property is adjacent to Bailey's Pond, which is shown as Lot 11 on the same Land Court Plan, and which is also owned by Marina Parking [Note 7]. There are a weir, spillway and related drainage structures on the Marina Parking land directing overflow from Bailey's Pond into a drain line that runs within a drainage easement across the Marina Parking property, then under Merrimac and Beacon Streets, on which the Marina Parking property has frontage, and under Pleasant Valley Road, and then into a drainage easement area on the other side of Merrimac Street (where it becomes Pleasant Valley Road) on property owned by the Hatter's Point Condominium Association at 60 Merrimac Street. A drain line running through the easement area on the Condominium property at 60 Merrimac Street then directs drainage into the Merrimack River. 





5. The Condominium owns property at 60 Merrimac Street, across Merrimac and Beacon Streets from the Marina Parking property. The Condominium was created by a master deed registered by Amesburyport Corporation as the declarant, on April 29, 2002; after withdrawal of the Condominium property from the Registered Land system, the declarant recorded an amended and restated master deed on July 19, 2002. [Note 8] 





6. The drainage easement into which the drain line runs on the Condominium property, coming from the Marina Parking property, and under Merrimac (and Pleasant Valley Road) and Beacon Streets, was granted by Amesburyport Corporation to the Town of Amesbury on April 26, 2002, just prior to the creation of the Condominium. The storm drain easement ("2002 storm drain easement") runs along Pleasant Valley Road and then across the southwest corner of the Condominium property to the Merrimack River. [Note 9] 





7. The 2002 storm drain easement granted to the Town "[t]he perpetual right and easement...for all purposes incident to the use of the storm drain line, including installing, maintaining, repairing and replacing... any underground drain line, pipe(s) or other structures used in connection with said storm drain." [Note 10] 





8. And then, unusually for the owner of a servient estate, the Condominium, as the grantor of the 2002 storm drain easement, agreed to accept the following responsibilities in connection with the maintenance of the drainage structures in the drain easement area on the Condominium property, and under specified circumstances, the drainage structures on the Marina Parking property: "It is covenanted and agreed by the Grantor and Grantee that the Grantor shall have the responsibility for the maintenance of the said storm drain line and any associated structures within the Storm Drain Easement Area and, if an easement is hereafter obtained from the owner(s) of the premises of 77 Merrimac Street, Amesbury, the responsibility of cleaning and maintaining the weir and drain line at Bailey Pond to preclude the flooding of the said Pond across Merrimac Street." [Note 11] 





9. By a quitclaim deed dated "June, 2004," and registered with the Southern Essex Registry District of the Land Court on June 11, 2004, ("2004 deed") Parking for Amesbury, LLC conveyed to the Town of Amesbury the parcel of land and two easements described and called for in the Agreement dated September 19, 2002. [Note 12] The conveyance included a "drainage easement...to be used for enlargement, replacement maintenance, and removal of the outlet and drain line from Bailey's Pond to Merrimack (sic) Street." [Note 13] 





10. The Amended and Restated Master Deed for the Hatter's Point Condominium contains the following provision: 





 In order to protect the Condominium from overflow from the adjacent body of water known as Bailey's Pond, should the Declarant or the Town of Amesbury be able to secure an appropriate easement, license, right and/or agreement therefor, the Association shall maintain the weir on said Bailey Pond free of debris and in good working order. The Association shall, in all events, additionally maintain the Bailey Pond outflow pipe pursuant to the Strom (sic) Drain Easement described in Attachment A hereto. All costs thereof shall be Common Expenses. [Note 14] 





DISCUSSION 





 "Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr. v. Cranney, 436 Mass. 638 , 643-644 (2002); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 644. In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. See Attorney Gen. v. Bailey, 386 Mass. 367 , 371, cert. denied, 459 U.S. 970 (1982). Whether a fact is material or not is determined by the substantive law, and "an adverse party may not manufacture disputes by conclusory factual assertions." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 648. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When appropriate, summary judgment may be entered against the moving party and may be limited to certain issues. Community Nat'l Bank v. Dawes, 369 Mass. 550 , 553 (1976); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). 





 Additionally, "a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 714 (1991). To succeed, the party moving for summary judgment does not need to submit affirmative evidence to negate one or more elements of the opposing party's claim, but the motion must be supported by some material contemplated by Rule 56(c). Id. Though the supporting material offered does not need to disprove an element of the claim of the party who has the burden of proof at trial, it "must demonstrate that proof of that element at trial is unlikely to be forthcoming." Id. 





I. THE CITY OF AMESBURY MAY NOT RELY ON THE ALLEGED INVALIDITY OF THE 2004 DEED IN SUPPORT OF ITS ARGUMENT. 





 In its complaint in this action, the City of Amesbury expressly relied on the 2004 deed from Parking for Amesbury, LLC to the Town of Amesbury as the trigger for the claimed responsibility of the Condominium, agreed to by the declarant of the Condominium in the 2002 storm drain easement, to maintain the weir and drain line on the Marina Parking property. The City now, almost inexplicably, (because it undercuts the claim in its complaint that the Condominium is responsible for maintaining the drainage structures) disavows the 2004 deed and claims that it is void ab initio for failure to comply with the requirements of G. L. c. 40, § 14. Under the circumstances of this case, the City is estopped from now claiming the invalidity of the 2004 deed, and in any event, the acceptance of the deed was a valid exercise of the City's municipal authority.





 A. The City Is Estopped from Claiming that the 2004 Deed Is Void Ab Initio. 





 The City based its entire legal claim in its one-count complaint for declaratory judgment on the assertion that the "easement obtained by the City set forth in the 2004 Deed, is the easement referred to in the 2002 Deed from Amesburyport Corporation to the City, which, if obtained placed the responsibility upon Amesburyport Corporation, now Hatter's Point Condominium, to maintain the weir and drainage infrastructure at Bailey's Pond" on the Marina's Parking property at 77 Merrimac Street. [Note 15] In its section of the Joint Statement for the case management conference in this case, the City elaborated on this claim, explaining that the language in the 2002 storm drain easement between Amesburyport Corporation and the City "means that in the event an easement was obtained from the owner of 77 Merrimac Street, the Grantor, Amesburyport Corporation, would have the obligation to maintain the drainage infrastructure, including the weir, at Bailey's Pond. The City obtained such an easement, in a deed from Parking for Amesbury, LLC (the 2004 Deed)... This is the easement referred to in the deed from Amesburyport Corporation to the Inhabitants of Amesbury, which if obtained, would place responsibility upon Amesburyport Corporation (now Hatter's Point Condominium) to maintain the weir and drainage infrastructure." 





 Now, in opposition to the Condominium's motion for summary judgment, the City for the first time not only changes its legal position in the case, but effectively seeks to undercut the main contention in its own complaint without explanation, and without seeking to either amend its complaint to state a claim the City believes to be sustainable, or to dismiss its complaint. 





 Under these unusual circumstances, the City is estopped from disclaiming the validity of a deed upon which it relied and upon which it bases its unamended complaint in this action. "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176 , 184 (1998), citing Fay v. Federal Nat'l Mtge. Ass'n, 419 Mass. 782 , 787-788 (1995). "The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants." Canavan's Case, 432 Mass. 304 , 308 (2000). While, as noted, the doctrine of judicial estoppel ordinarily applies to estop a party from taking a position in one case contrary to the position it had taken in another case, the doctrine is available in other circumstances to forestall parties from taking inappropriate positions. Judicial estoppel is not to be defined with reference to "inflexible prerequisites or an exhaustive formula for determining (its] applicability." New Hampshire v. Maine, 532 U.S. 742, 751 (2001). Rather, the doctrine is properly invoked whenever a "party is seeking to use the judicial process in an inconsistent way that courts should not tolerate." East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621 , 623 (1996). "Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion." Otis v. Arbella Ins. Co., 443 Mass. 634 , 639-640 (2005), citing New Hampshire v. Maine, supra, 532 U.S. at 750. 





 Where, as here, the City attempts to take a position that is not merely an alternative argument, but rather the City itself raises an issue that undercuts its own case, and does so with no appropriate attempt to modify the pleadings, it is appropriate to apply the doctrine of judicial estoppel to bar the City from taking a position that is inconsistent with its legal position and inappropriate without a corresponding amendment to the pleadings or request to dismiss its case. Accordingly, the City is estopped from denying the validity of the 2004 deed by which it accepted a drainage easement over 77 Merrimac Street. 





 B. The 2004 Deed Is Valid. 





 Regardless of the application of the doctrine of judicial estoppel, the City's position that the 2004 deed was void ab initio for failure to comply with G. L. c. 40, § 14 is without merit. G. L. c. 40A, § 14 provides as follows: 





 The aldermen of any city, except Boston, or the selectmen of a town may purchase, or take by eminent domain under chapter seventy-nine, any land, easement or right therein within the city or town not already appropriated to public use, for any municipal purpose for which the purchase or taking of land, easement or right therein is not otherwise authorized or directed by statute; but no land, easement or right therein shall be taken or purchased under this section unless the taking or purchase thereof has previously been authorized by the city council or by vote of the town, nor until an appropriation of money, to be raised by loan or otherwise, has been made for the purpose by a two thirds vote of the city council or by a two thirds vote of the town, and no lot of land shall be purchased for any municipal purpose by any city subject to this section for a price more than twenty-five per cent in excess of its average assessed valuation during the previous three years. 





 The words "municipal purpose", as used in this section, shall include any such land, easement or right therein within the city or town, so purchased or taken by eminent domain for the purpose of conveying or granting the same to the commonwealth for the use of a regional community college. 





 The statute governs the purchase of land by a municipality (other than Boston) only for land that is "not already appropriated to public use." It is undisputed that the land that was the subject of the 2004 deed had already been in public ownership pursuant to a tax taking and tax foreclosure. Land that is held by a municipality pursuant to a tax taking and foreclosure need not be sold using the procedures imposed by G. L. c. 40, § 14. Bd. of Selectmen of Hanson v. Lindsay, 442 Mass. 502 , 505-506 (2005). 





 The City sold the land by public auction subject to a memorandum of sale and recorded agreement providing that the City would, in effect, retain certain interests in the land upon its sale. The mechanism for the City to retain these interests was for the City to deed the parcel to the buyer, with the buyer then reconveying to the City a smaller parcel and the two easements. This transaction did not require the expenditure of municipal funds, and therefore no appropriation was required. Furthermore, it involved land that was already appropriated to public use, as the taking of land for failure to pay taxes pursuant to G. L. c. 60 is a public function. Land so taken is held for the benefit of the public and is deemed held for municipal purposes. G. L. c. 60, § 77, first para. ("...the land shall thereafter be held and disposed of like any land belonging to it and held for municipal purposes..."). 





 Where the City already owned the land, and held it for municipal purposes, it was also within the power of the City to sell less than all the land by agreeing to convey all of the land and then receive back a conveyance of one parcel and two easements. See Russell v. Town of Canton, 361 Mass. 727 (1972) (selectmen, authorized by town meeting to acquire parcel, could acquire less than the entire parcel). Accordingly, the City (then known as the Town) was not required to comply with G. L. c. 40, § 14 in accepting the 2004 deed and along with it a drainage easement over 77 Merrimac Street. 





 C. The City Is Estopped by Statute from Disclaiming the validity of the 2004 Deed. 





 Finally, the City is estopped by statute from disclaiming the validity of the 2004 deed. G. L. c. 40, § 3A provides in relevant part as follows: 





 Any recordable instrument purporting to affect an interest in real estate, title to which is held by a city, town, district or regional school district, executed in the name of a...city by its mayor...shall be binding on the city, town, district or regional school district in favor of a purchaser or other person relying in good faith on such instrument notwithstanding inconsistent provisions of general or special law, the city or town charter, by-laws, resolutions or votes. 





 The memorandum of sale, the agreement, and the Extension Agreement, by which the City agreed to accept the conveyance of the drainage easement in the 2004 deed, were all signed by the mayor of Amesbury and were all recorded. Accordingly, the conveyance of the drainage easement in the 2004 deed is binding on the City "notwithstanding inconsistent provisions" of law or the failure, if there was such a failure, to obtain a vote of the city council or take other steps to facilitate the acceptance of the 2004 deed. 





 For the reasons stated above, it is appropriate for the court to consider the 2004 deed as valid and binding on the City in considering the parties' arguments concerning rights and obligations relating to the drainage easement on 77 Merrimac Street. 





II. THE 2002 DEED CONVEYING THE EASEMENT FROM PARKING FOR AMESBURY LLC TO THE TOWN OF AMESBURY UNAMBIGUOUSLY REPRESENTS THE AGREEMENT OF THE CONDOMINIUM'S PREDECESSOR TO ACCEPT RESPONSIBILITY FOR MAINTENENANCE OF DRAINAGE STRUCTURES AT 77 MERRIMAC STREET IF EITHER PARTY TO THE DEED OBTAINED AN EASEMENT. 





 The parties' rights and obligations with respect to the drainage structures on the Marina Parking property at 77 Merrimac Street must be determined in the first instance by examining the language of the April 26, 2002 storm drain easement deed and the June, 2004 deed. Only if the language of these two deeds is ambiguous with respect to those rights and obligations will the court examine parol evidence, 





 "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." White v. Hartigan, 464 Mass. 400 , 410 411 (2013). The longstanding rule in Massachusetts is that it only becomes necessary to look beyond the face of the deed when its language is ambiguous. See Stone v. Clark, 42 Mass. 378 , 381 (Mass. 1840) ("When the language of a conveyance is unambiguous, no parol evidence to vary or control its import is admissible. But where the language is doubtful, especially in the description of the land conveyed, there evidence of the practical construction by the parties is admissible to explain and remove the doubt."); Panikowski v. Giroux, 272 Mass. 580 , 582 (1930); Oldfield v. Smith, 304 Mass. 590 , 600 (1939); Westchester Assocs. v. Boston Edison Co., 47 Mass. App. Ct. 133 , 135 (1999); Hamouda v. Harris, 66 Mass. App. Ct. 22 , 25 (2006). See also Lindsay v. Bd. of Appeals of Milton, 362 Mass. 126 , 131 (1972) ("In interpreting a deed, we seek, in so far as established rules of construction permit, 'to give effect to the intent of the parties as manifested by the words used.'"). "Deed language can be ambiguous if 'its meaning... is uncertain and susceptible of multiple interpretations.'" Faneuil Inv'rs Grp., Ltd. P'ship v. Bd. of Selectmen of Dennis, 75 Mass. App. Ct. 260 , 267-268 (2009), affd sub nom. Faneuil Inv'rs Grp. v. Bd. of Selectmen of Dennis, 458 Mass. 1 (2010), quoting Hamouda v. Harris, supra, 66 Mass. App. Ct. at 26. "It is a rule in the construction of deeds, that the language, being the language of the grantor, is to be construed most strongly against him." Estes v. De Mello, 61 Mass. App. Ct. 638 , 642 (2004). 





 An easement granted by deed is subject to the same legal principles as those governing interpretation of deeds conveying a fee interest. "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." Sheftel v. Lebel, 44 Mass. App. Ct. 175 , 179 (1998). Similarly, where a deed of easement is granted, the grant must be construed with reference to all its terms and the then existing conditions so far as they are illuminating." Hamouda v. Harris, supra, 66 Mass. App. Ct. at 26, quoting Mugar v. Massachusetts Bay Transp. Auth., 28 Mass. App. Ct. 443 , 444 (1990). The words of the grant are most important, "but those words may be construed in light of the attendant circumstances" and the circumstances to which they refer. Hamouda v. Harris, supra, 66 Mass. App. Ct. at 26. When terms of a deed apparently conflict, the general terms of the deed will yield to the more specific terms of the deed. Morse v. Chase, 305 Mass. 504 , 508 (1940); Lembo v. Waters, 1 Mass. App. Ct. 227 , 232-233 (1973). Whether there is an ambiguity in the language of the deed is a question of law to be determined by the court, and may be appropriately decided on summary judgment. Seaco Ins. Co. v. Barbosa, 435 Mass. 772 , 779 (2002). The language of a deed can be ambiguous if "its meaning ... is uncertain and susceptible of multiple interpretations." Hamouda v. Harris, supra, 66 Mass. App. Ct. at 26. 





 Looking at the 2002 deed conveying the storm drain easement in the light of these principles, there is nothing even remotely ambiguous about the terms of the grant or the intention of the parties as expressed in the 2002 storm drain easement deed. The storm drain easement deed granted an easement for drainage and maintenance of drainage structures within the storm drainage easement area defined in the storm drain easement by reference to an easement plan of land depicting the easement area of 1,552 square feet on the Condominium property at 60 Merrimac Street. [Note 16] The language as to which the parties disagree is the language concerning the grantor's (Amesburyport Corp., the predecessor and declarant of the Condominium) acceptance, as owner of the servient estate, of the obligations of maintenance that ordinarily would be accepted by the grantee of the easement, or owner of the dominant estate. While the parties do not dispute the intent of the grantor, as owner of the servient estate, to accept responsibility for maintenance of drainage structures within the drainage easement area on its property, they disagree about the purported acceptance of responsibility for maintenance of the drainage structures on property across Merrimac Street at 77 Merrimac Street or under the public way between the two properties. Although quoted in the fact section, above, this language bears repeating: 





 It is covenanted and agreed by the Grantor and Grantee that the Grantor shall have the responsibility for the maintenance of the said storm drain line and any associated structures within the Storm Drain Easement Area and, if an easement is hereafter obtained from the owner(s) of the premises of 77 Merrimac Street, Amesbury, the responsibility of cleaning and maintaining the weir and drain line at Bailey Pond to preclude the flooding of the said Pond across Merrimac Street. 





 The Condominium argues that the language obligating the grantor in the storm drain easement deed to maintain the drainage structures at 77 Merrimac Street only does so if the Grantor obtains an easement from the owner of 77 Merrimac Street. There is no reason to read such language into the deed, as the deed is not ambiguous as written."[I]f an easement is hereafter obtained from the owner(s) of the premises of 77 Merrimac Street..." means just what it says: if an easement is obtained, without limitation as to which of the parties to the present storm drain easement deed obtains such an easement, then the grantor (or its successor) accepts the responsibility of maintaining the drainage structures on 77 Merrimac Street as well. In arguing that it is unlikely that Amesburyport Corporation, as owner of 60 Merrimac Street, could have intended to accept responsibility for maintaining drainage structures on anothers land, the Condominium ignores the unusual undisputed fact that in the same sentence of the storm drin easement deed the grantor, as owner of the servient estate, accepted responsibility for maintenance of the drainage easement it had just granted on its own property. 





 Furthermore, this agreement to maintain drainage structures on two easements, one on its own property and one on the property across the street, is perfectly understandable, "in the light of the attendant circumstances." Sheftel v. Lebel, supra, 44 Mass. App. Ct. at 179. The drainage structures at Bailey's Pond on the Marina Parking property and the drainage structures in the storm drainage area on the Condominium property (as well as the pipes under the public way connecting them) are part of the same drainage system regulating the overflow from Bailey's Pond and directing it across the Marina Parking property, under Merrimac Street, and across the Condominium property to the Merrimack River. Any failure of the system was reasonably expected to present a flooding problem for the Condominium property at 60 Merrimac Street. Hence the acknowledgment in the Condominium's master deed of both the danger of water overflowing from the drainage system onto the Condominium property, and the intended solution whereby the Condominium would accept the responsibility for maintenance of that system. [Note 17] 





III. THE CONDOMINIUM IS OBLIGATED TO MAINTAIN THE DRAINAGE STRUCTURES IN THE EASEMENT ON THE MARINA PARKING PROPERTY AND UNDER THE PUBLIC WAYS. 





 Upon the execution, delivery and recording of the 2004 deed between Parking for Amesbury, LLC and the Town of Amesbury, the agreement between Amesbury Corporation, the predecessor and declarant of the Condominium, and the Town, by which Amesbury Corporation agreed on behalf of itself and its successors that, "if an easement is hereafter obtained" it would take over "the responsibility of cleaning and maintaining the weir and drain line at Bailey Pond to preclude the flooding of the said Pond across Merrimac Street" ripened into a present obligation of the Condominium. 





 The drainage structures covered by their agreement included the weir, which was the "outlet" at Bailey's Pond, and the drain lines running through Lot 9 at 77 Merrimac Street, under Merrimac Street (and Beacon Street and Pleasant Valley Road) on or under land already controlled by the Town of Amesbury, and then through the storm drainage easement area at 60 Merrimac Street, which was the direct subject of the 2002 storm drain easement deed. Upon acquiring the 2004 easement over 77 Merrimac Street, the Town of Amesbury now had the rights to maintenance over the rest of the drainage system the Condominium's predecessor had agreed was a condition to its agreement to take over maintenance of that system. 





 As the owner of the dominant estate with rights to enter upon 77 Merrimac Street to maintain the drainage structures, the Town had the right and ability to assign those rights and responsibilities to the Condominium, and the Condominium had the ability, and, pursuant to the 2002 storm drain easement deed, the obligation to accept those responsibilities. The 2004 easement was appurtenant to the Town's rights in the storm drainage easement at 60 Merrimac Street and also to its adjacent property, Merrimac Street and the other adjacent public ways owned by the Town. That rights and obligations in an appurtenant easement are assignable, and not just personal to the grantee, as are rights in an easement in gross, is a longstanding principle of Massachusetts law. Dennis v. Wilson, 107 Mass. 591 (1871). Under certain circumstances even an easement in gross may be "assignable and inheritable." Amidon v. Harris, 113 Mass. 59 , 64 (1873). As the owner of 60 Merrimac Street, including the land subject to the 2002 storm drain easement through which the drain lines ran to the Merrimack River, the rights and obligations accepted by the Condominium's predecessor ripened into appurtenant rights and obligations of the Condominium for the drainage area at 77 Merrimac Street upon the acquisition by the Town of the 2004 easement. 





 Upon the acquisition by the Town of the 2004 easement, the Condominium became obligated to maintain the weir and the drain lines; not only the parts on 77 Merrimac Street, but the entire drain line, including the pipes that run under Merrimac Street and the adjacent public ways. What the Condominium's declarant agreed to accept in the 2002 storm drain easement deed was "the responsibility of cleaning and maintaining the weir and drain line at Bailey Pond to preclude the flooding of the said Pond across Merrimac Street." The term "the drain line at Bailey's Pond" was not limited to the portion of the drain line on the property at 77 Merrimac Street, nor is the stated purpose "to preclude the flooding of the said Pond across Merrimac Street" consistent with a limitation of the responsibility to only those portions of the drain line on the 77 Merrimac Street property. Obviously, the entire drain line must be maintained in order to prevent flooding of the Condominium property "across Merrimac Street," and that is the unambiguously described responsibility the Condominium took on when its declarant accepted that responsibility and the Town obtained the 2004 easement. 





CONCLUSION 





 For the reasons stated above, the defendant Hatter's Point Condominium Association's motion for summary judgment is DENIED; the City of Amesbury's cross-motion for summary judgment is ALLOWED. 





 Judgment will enter accordingly. 





FOOTNOTES
[Note 1] The street is properly spelled "Merrimac;" the river is properly spelled "Merrimack." 

[Note 2] The Condominium filed a motion to expand the summary judgment appendix on September 24, 2021. That motion has been denied by a separate order. 

[Note 3] Statement of Undisputed Material Facts ("SOF"), ¶¶ 6, 8; Appendix ("App.") 2. 

[Note 4] The Town of Amesbury, although already a city by form of government in 2002, continued to be known as the "Town of Amesbury" until it changed its name to "City of Amesbury" by a November, 2011 charter amendment. Accordingly, the City of Amesbury is referred to in this decision as the "Town of Amesbury" for all periods before the 2011 charter amendment. 

[Note 5] App. 9, "Agreement" dated September 19, 2002, recorded with Essex South District Registry of Deeds on September 20, 2002 in Book 19261, Page 72. 

[Note 6] App. 12, "Extension Agreement" dated December 3, 2003, recorded with the Registry on December 15, 2003 in Book 22189, Page 477. 

[Note 7] App. 2. 

[Note 8] App. 1, Amended and Restated Master Deed, recorded with Essex South District Registry of Deeds in Book 18960, Page 182. 

[Note 9] App. 7, Storm Drain Easement, dated April 26, 2002, recorded with Essex South District Registry of Deeds on July 19, 2002 in Book 18960, Page 172; App. 8, Easement Plan of Land Located in Amesbury, Massachusetts, prepared by Meridian Engineering, Inc., dated April 19, 2002. 

[Note 10] App. 7. 

[Note 11] Id. 

[Note 12] App. 14, Quitclaim Deed dated June, 2004, registered with the Registry District of the Land Court on June 11, 2004 as Document No. 441373, with a plan reference to Plan No. 26500D. Apparently the parties to this transaction agreed to waive the expiration of the dated for performance as extended by the Extension Agreement. 

[Note 13] Id. 

[Note 14] App. 1, Amended and Restated Master Deed, ¶ 3.D. 

[Note 15] Complaint, ¶ 14. 

[Note 16] App. 7,8. The Easement Plan of Land submitted by the parties as an undisputed depiction of the storm drain easement area on 60 Merrimac Street bears a different date, April 19, 2002, than the plan referred to in the storm drain easement deed, which has a date of March 5, 2002. The court considers this discrepancy as immaterial as there is no dispute that the plan submitted to the court accurately depicts the storm drainage easement area. 

[Note 17] App. 1, Amended and Restated Master Deed, ¶ 3.D. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.